UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL HENRY BLANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14 CV 1550 DDN |
| | ) | |
| BROADSWORD GROUP, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the court on the motion of defendant Broadsword Group, LLC to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1). (Doc. 51.) In the alternative, defendant argues that Counts V, VI, and VII of plaintiff's second amended complaint (Doc. 48) should be dismissed under Federal Rule of Civil Procedure 12(b)(6). The plaintiff has also filed a motion to amend the complaint a third time. (Doc. 57.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 12.) These issues have been fully briefed.

## I. BACKGROUND

On September 9, 2014, plaintiff commenced this action against defendants Broadsword Group, LLC and Sharps Rifle Company, Inc. Plaintiff filed his first amended complaint on October 30, 2014, (Doc. 15) and parties agreed to a partial settlement and dismissal on April 9, 2015. (Doc. 37.) Plaintiff retained counsel and filed a second amended complaint, which dismissed Sharps Rifle Company, Inc. as a named defendant. (Docs. 50, 49.) Plaintiff filed a motion to amend his complaint a third time

on June 26, 2015, which this court denied. According to plaintiff's alleged facts, the following occurred.

Plaintiff was the founder and majority owner of Sharps Rifle Company, LLC, an LLC in Montana, from 2007 to 2011. (Doc. 48 ¶ 3) Sharps, LLC was transferred to Sharps Rifle Company, Inc. ("Sharps"), a Wyoming corporation in 2011. (Id. at ¶ 4.) In early November 2012, plaintiff met with Mr. Jay Johnston and spoke about Johnston acquiring an ownership interest in Sharps, as well as, acquiring trademarks, patents, inventions, and ideas for inventions then owned by plaintiff. (Id. at ¶¶ 5–6.) On November 9, 2012, Mr. Jay Lesser, representing Johnston, contacted plaintiff and offered a minimum 10% stake in the new company if plaintiff assisted Johnston in acquiring the trademarks, patents, inventions, and other previously discussed items that plaintiff owned. (Id at ¶¶ 7–8.) Plaintiff contacted Johnston on November 9, 2012, and accepted the offer presented to him by Lesser on Johnston's behalf. (Id. ¶ 9.) This oral agreement is referred to as the "Ownership Contract" by plaintiff. (Id.) Johnston formed Broadsword Group, LLC as a Wyoming LLC on December 26, 2012. (Id. ¶ 10.)

Johnston sent plaintiff a letter containing a written offer of employment ("Employment Contract") on January 4, 2013 offering employment as "Chief Armorer" at a salary of $60,000 per year with a possible year-end performance bonus. (Id. ¶ 11.) In this letter, there was no mention of the previous oral ownership contract. (Id.) Plaintiff was actually paid a salary of $75,000 per year. (Id. at ¶ 15.) The Employment Contract provided that termination could only be done with thirty days' notice, unless done "for cause". (Id. at ¶ 13.) The Employment Contract did not mention Broadsword acquiring the intellectual property, trademarks, patents, inventions, or ideas for inventions currently owned or that might be developed by plaintiff. (Id. at ¶ 14.) Plaintiff spoke with Johnston regarding this letter on January 4, 2014, and Johnston stated that actual salaries, commission, etc. would be firmed up in February. (Id. ¶ 12.) Plaintiff signed this Employment Contract on January 5, 2013, based on Johnston's January 4, 2015 representation. (Id. ¶ 12.)

Between January 5 and February 11, 2013, Lesser and Johnston confirmed to plaintiff that the agreement for a 10% ownership share of Broadsword would still be honored. (Id. at ¶ 16.) On February 11 and 20, 2013, plaintiff assigned to Sharps several trademarks plaintiff held either personally or in the name of companies in which plaintiff was the sole owner, because plaintiff believed he would be receiving a 10% interest in Broadsword. (Id. at ¶¶ 17–18.) On February 24, 2013, plaintiff released Sharps from any and all claims he had and gave up his equity ownership interest. This allowed Broadsword to acquire 100% ownership in Sharps sometime subsequent to February 24, 2013. (Id. at ¶¶ 19–20.) On March 19, 2013, Johnston told plaintiff that Broadsword was working on putting the 10% ownership interest into written form, which never happened. (Id. at ¶ 21.)

Following Broadsword's acquisition of Sharps, plaintiff continued to design and develop inventions, some of which were patented, and some of which are only potential patents. (Id. ¶ 22.) Plaintiff provided these inventions and patents, per the oral ownership contract, to Broadsword and Sharps. (Id. at ¶ 22.) On August 7, 2013, Johnston orally confirmed to plaintiff, again, that he was to receive 10% ownership in Broadsword in return for his trademarks, patents, inventions, and products.

On March 6, 2014, plaintiff was told by Lesser and Johnston that he was terminated effective March 7, 2014. On March 7, 2014, plaintiff came to work and was told to turn in his keys and vacate the premises. Plaintiff was not provided 30 days notice prior to the termination, nor was he paid after March 7, 2014. (Id. at ¶¶ 25–27.) A March 7, 2014 email from Lesser to plaintiff stated plaintiff's termination was not "for cause." (Id. at ¶ 27.)

On March 17, 2014, plaintiff received a letter from Broadsword stating he was terminated as of March 7, 2014. (Id. at ¶ 28.) The letter offered payment of plaintiff's salary through April 7, 2014, if he would waive any claim for further compensation or other expectation of remuneration related to plaintiff's employment at Broadsword. (Id.) The letter also stated plaintiff would have to help in the filing of patents for some of the products plaintiff brought to Broadsword. (Id.) Plaintiff did not sign the letter and has

not received any salary or other payments from Broadsword as of March 7, 2014. (Id at ¶ 29.)

Plaintiff alleges a breach of ownership contract in Count I. (Id. at 8.) In Count II plaintiff alleges that Broadsword breached the ownership contract. (Id. at 9.) In Count III plaintiff alleges that he detrimentally relied on defendant's promises. (Id. at 10–12.) In Count IV plaintiff alleges that defendant breached the employment contract. (Id. at 12–13.) In Count V plaintiff alleges a breach of implied covenant of good faith and fair dealing. (Id. at 13–15.) In Count VI plaintiff alleges defendant intentionally inflicted emotional distress. (Id. at 16–17.) In Count VII plaintiff alleges defendant committed fraud. (Id. at 17–18.)

Plaintiff seeks damages for the breach of ownership contract through traditional damages, specific performance, and promissory estoppel. (Id. at 8–12.) Plaintiff seeks significant damages for the breach of employment contract, implied covenant of good faith, intentional infliction of emotional distress, and fraud. (Id. at 12–18.) Plaintiff also seeks reasonable attorney's fees and costs regarding each claim. (Id. at 8–18.)

Defendant has filed a counterclaim against plaintiff alleging breach of the employment contract. Defendant seeks either the fair market value of all Broadsword property still maintained by plaintiff in violation of the employment contract, or specific performance. (Doc. 53 at 15–16.)

## II. MOTION TO AMEND

Plaintiff argues that his motion to amend merely clarifies the subject matter jurisdiction of the court, because that jurisdiction "could have been pled more fully and more clearly" in the second amended complaint. (Doc. 57 ¶ 4.) Defendant argues that the court already granted plaintiff two opportunities to amend his complaint (Docs. 15, 48), and this third amended complaint comes eight months into the case. Furthermore, defendant argues, the motion to amend this complaint comes only after defendant filed a motion to dismiss based on a lack of subject matter jurisdiction. (Doc. 59.) Finally, if, as

plaintiff states, the second amended complaint sufficiently pled subject matter jurisdiction then this amended pleading is superfluous. (Id.)

## A. Legal Standard

Motions to amend a complaint are left to the discretion of the district court. Popalii v. Corr. Med. Servs., 512 F.3d 488, 487 (8th Cir. 2008). "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. A district court can "remedy inadequate jurisdiction allegations," it cannot remedy "defective jurisdictional facts." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 831 n.5 (1989); TKE Enters., Inc. v. Crack Team, U.S.A., Inc., No. 4:11 CV 1435 HEA, 2013 WL 1883072, at *2 (E.D. Mo. May 6, 2013). Amendments to cure jurisdiction may be allowed as late as on appeal of an order of dismissal. See Wierman v. Casey's Gen. Store, 638 F.3d 984, 1004 (8th Cir. 2011); Barclay Square Properties v. Midwest Fed. Sav. and Loan Ass'n of Minneapolis, 893 F.3d 968, 969 (8th Cir. 1990).

## B. Discussion

This case was filed, pro-se, on September 10, 2014 and an amended complaint was filed on October 30, 2014. (Docs. 1, 15.) The initial scheduling order was approved by the court on November 14, 2014. (Doc. 20.) Plaintiff retained counsel on April 22, 2015, who requested leave to amend the complaint and revise the scheduling order. (Doc. 42.) After a hearing, the court granted plaintiff leave to amend the complaint and revised the scheduling order. (Docs. 44, 45.) The amended case management order stated May 25, 2015 was the last day to amend the complaint and that discovery would close on August 14, 2015. (Doc. 46.) Plaintiff filed an amended complaint on May 26, 2015. (Doc.48.) Defendant filed a motion to dismiss based on a lack of subject matter jurisdiction on June 12, 2015. (Doc. 51.) In order to more clearly show diversity jurisdiction, plaintiff filed an amended complaint on June 26, 2015. (Doc. 58.) The only change in between the second amended complaint and the third is that plaintiff clearly states the court has diversity jurisdiction under 28 U.S.C. § 1332. (Compare Doc. 48 at 7–8 with Doc. 58 at

7–8.) Because 28 U.S.C. § 1653 should be construed liberally, the court grants plaintiff's motion (Doc. 58) to amend the complaint to plead diversity jurisdiction.

### III. MOTION TO DISMISS

Defendants move to dismiss, first arguing that plaintiff has failed to establish that this court has subject matter jurisdiction over this action. (Doc. 51 at 1); Fed. R. Civ. P. 23(b)(1). In the alternative, defendant argues that Counts 5-7 of plaintiff's second amended complaint fail to state a claim. Fed. R. Civ. P. 12(b)(6). Plaintiff requested in his motion to file a third amended complaint (Doc. 57) that the court direct defendant's motion to dismiss the second amended complaint towards the third amended complaint.[1] Although an amended complaint typically moots a previously filed motion to dismiss, the court addresses defendant's motion to dismiss plaintiff's second amended complaint as if it was addressed to the third. There are no differences between the two amended complaints, save an addition of paragraphs 31 and 32 detailing why this court has diversity jurisdiction. (Compare Doc. 48 at 7–8 with Doc. 58 at 7–8.)

Plaintiff argues that enough facts have been pled, which must be accepted as true by the court, to show that there is a possibility of a claim upon which relief may be granted. (Doc. 56 at 2.)

Subject Matter Jurisdiction

**A. Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of the court to hear and decide the case. Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990. A court may dismiss based on lack of subject matter jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by

---

[1] The court believes plaintiff erroneously said, "Plaintiff is willing to stipulate that, to the extent applicable, Broadsword's motion to dismiss the second amended complaint may be deemed directed toward the second amended complaint so that it is not necessary for Broadsword to file or for the Court to consider duplicative pleadings." (Doc. 57 (emphasis added). It is clear to the court plaintiff intended to say "deemed directed toward the third amended complaint".

undisputed facts; (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008). A court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." Osborn, 918 F.2d at 729; Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981). There are two types of 12(b)(1) motions, ones that make facial attacks on the pleadings and those that make factual attacks using material outside the pleadings. See MC Produce, Inc. v. Aggressive Devs. of Missouri, L.L.C., et al., No. 1:09 CV 19 CDP, 2009 WL 1309899, at * 1 (E.D. Mo. May 11, 2009) (citing Osborn, 918 F.2d at 729 n.6). The motion at hand challenges only the facts alleged in the pleadings.

### B. Discussion

Defendant argues that plaintiff failed to provide the grounds for the court's subject matter jurisdiction over the case. Plaintiff cites 28 U.S.C. §§ 1331 (federal question), 1338(a) (patents, copyrights, and trademarks), 1367 (supplemental jurisdiction), 15 U.S.C. § 1121(a) (trademarks), and 28 U.S.C. § 1332 (diversity). (Doc. 58 at 7–8.) Defendant argues that there is no federal question at hand and plaintiff has failed to allege facts which would allow for an amount in controversy over $75,000. (Doc. 61 at 3–4.) In his memorandum in opposition to defendant's motion to dismiss plaintiff argues that the amount in controversy pled is over $75,000 as it includes 10% interest in Broadsword; damages caused by defendant's delay in honoring the alleged contracts; amount owed from improper termination of the employment contract; punitive damages; as well as, interest and attorney's fees. (Doc. 56 at 3.)

As a court of limited jurisdiction, this court must be satisfied that it has subject matter jurisdiction. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). A claimant does not need to include a recitation of jurisdiction in the introductory paragraphs. Bardner v. First Am. Title Ins. Co, 294 F.3d 991, 993–94 (8th Cir. 2002) (finding that the facts found within the complaint, and not the introductory paragraphs, properly alleged subject matter jurisdiction). Rule 8(a)(1) is satisfied if the complaint "say[s] enough about jurisdiction to create some reasonable likelihood that the

court is not about to hear a case that it is not supposed to have the power to hear." Id., 294 F.3d at 994 (quoting Hammes v. AAMCO Transmissions, Inc., 33 F.3d 774, 778 (7th Cir. 1994)). A claimant may not, however, merely recite jurisdictional statutes without facts to support those claims. Id.

Plaintiff claims jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1338(a) (patents, copyrights, and trademarks), 1367 (supplemental jurisdiction), and 15 U.S.C. § 1121(a) (trademarks). (Doc. 48 at 7.) Patent law is not at the heart of this dispute; rather, the claims center on Wyoming contract and tort law. Counts 1 through 5 are claims based on the alleged ownership and employment contracts between the parties. Id. 8–15. Counts 6 and 7 are common law torts, intentional infliction of emotional distress and fraud. Id. at 15–17. The court finds no claim that would meet federal question or patent law jurisdiction under 28 U.S.C. §§ 1331 or 1338, or under 15 U.S.C. § 1121.

As previously discussed, this court grants the motion for a third amended petition, which directly asserts diversity jurisdiction over this matter. Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship. 28 U.S.C. § 1332(a). Neither party disputes that there is complete diversity between the parties. Therefore the only matter at issue regarding diversity jurisdiction is the amount in controversy.

The amount in controversy is viewed from the eyes of the plaintiff. Smith v. Am. States Preferred Ins. Co., 249 F.3d 812, 813 (8th Cir. 2001). Although the federal amount in controversy governs, this court looks to state law to determine the nature and extent of plaintiff's rights. Horton v. Liberty Mut. Ins. Co, 367 U.S. 348, 352–52 (1961); Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 397–98 (3d Cir. 2004) (if a state disallows punitive damages, the federal court may not include them in the jurisdictional amount); Munro v. Golden Rule Ins. Co, 393 F.3d 720, 721 (7th Cir. 2004) (Wisconsin law allows for attorney fees; thus, they can help meet the jurisdictional amount). If a plaintiff does not allege a specific amount of damages, the court must examine the complaint to ensure it exceeds $75,000. Usery v. Anadarko Petroleum Corp., 606 F.3d

1017, 1018–19 (8th Cir. 2010).  Generally, a plaintiff's good faith assertion that his claim meets the jurisdictional minimum will suffice.  Schubert v. Auto Owners Ins. Co., 619 F.3d 817, 822 (8th Cir. 2011).  To fail the jurisdictional amount, it must be a "legal certainty" that the plaintiff's claim "is actually for less than the jurisdictional amount." Schubert, 619 F.3d at 822.  "Legal certainty" is met when the "legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim."  Id. (quoting JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010)).

Plaintiff does not allege a specific amount in his claim.  (Doc. 58.)  The only Count that could have an estimated value put on it is Count 4.  Count 4's amount in controversy is approximately $5,000, the salary for plaintiff's last month of employment.  Rather in Counts 1, 2, and 3 he requests 10% ownership of Broadsword and damages for defendant's delay in honoring the contract.  (Id. at 9, 10, 12.)  He seeks unspecified compensatory and punitive damages for the torts of good faith and fair dealing, intentional infliction of emotional distress, and fraud.  (Id. at 15–19.)  There is no cap on compensatory damages in Wyoming.  See Martinez v. City of Cheyenne, 791 P.3d 949 (Wyo. 1990) (overruled on other grounds, Beaulieu v. Florquist, 86 P.3d 863 (Wyo. 2004)).  There is also no cap on punitive damages, though they should be related to the amount of compensatory damages awarded.  See Hatch v. Walton, 343 P.3d 390, 398–99 (Wyo. 2015).  Defendant questions the worth of Broadsword as sufficient to meet the amount in controversy requirement.  (Doc. 61 at 3.)  Defendant does not address the possible amounts demanded in Counts 5-7 through both compensatory and punitive damages. (See id. at 2–4.)

Upon this record, the court finds that there is both complete diversity between the parties and the amount in controversy exceeds $75,000.  Because this court finds it has jurisdiction due to the citizenship of the parties and the amount in controversy, there is no need for the court to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

## Failure to State a Claim regarding Counts 5-7

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. See Carton v. Gen. Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555. The pleading must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Discussion

#### a. Count V – Good Faith and Fair Dealing

Defendant argues that plaintiff has failed to plead facts sufficient to argue that there was an implied covenant of good faith and fair dealing regarding the employment contract. (Doc. 52 at 5–7.) Plaintiff counters that this is a fact-specific inquiry that should be put to the trier-of-fact. (Doc. 56 at 6.)

In order to prove the tort of breach of the covenant of good faith and fair dealing in employment contracts plaintiff must show: 1) there was a duty created by a special relationship between the employer and employee, and 2) the duty was breached. Kuhl v. Wells Fargo Bank, N.A., 281 P.3d 716, 727–28 (Wyo. 2012). Examples of actions that may create a special relationship include the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service. Id. at 728. "Most commonly the employee must have been terminated to avoid payment of commissions or benefits already earned, or to avoid payment of benefits scheduled to arise or vest in the

near future." Worley v. Wyo. Bottling Co., Inc., 1 P.3d 615, 627 (Wyo. 2000). These examples, however, are not exhaustive. Id.

Plaintiff has alleged that he was promised multiple times, both before and after the signing of both the employment and ownership contract documents, a 10% share in Broadsword for assigning his patents to the company. (Doc. 56 at 6–7.) Plaintiff also contends that Broadsword made his continued employment extremely difficult and then fired him in order to avoid actually assigning him the 10%. (Id.) As evidence of this intent plaintiff argues the letter offering him the last month's salary was merely a veiled attempt to get him to release his 10% interest in Broadsword. (Id. at 7.)

Reasonable minds could disagree as to whether there was a special relationship formed through the alleged multiple promises to plaintiff by defendant. Therefore, the motion to dismiss Count 5 is denied.

b. Count VI – Intentional Infliction of Emotional Distress

Defendant argues that under Wyoming law the dismissal of an at-will employee cannot be the only reason for emotional distress. (Doc. 52 at 7.) Plaintiff counters that his claim alleges that the dismissal was merely one action in a series of outrageous conduct that caused his emotional distress. (Doc. 56 at 7.)

Intentional infliction of emotional distress is a recognized tort in Wyoming common law. Cook v. Shoshone First Bank, 126 P.3d 886, 891 (Wyo. 2006). It is defined as,

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Id. (quoting Restatement (Second) of Torts § 46 (1965)). Extreme conduct is defined as conduct "which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in civilized society." Leithead v. Am. Colloid Co., 721 P.2d 1059, 1067 (Wyo. 1986). Wyoming case law limits the ability of an at-will employee to

collect, because he or she may be dismissed at any time for any reason; therefore, an employee must be expected to cope with the possible stress of an unexpected dismissal. Leithead, 721 P.2d at 1067. Employers are allowed to "insist upon [their] legal rights in a permissible way." Leithead, 721 P.2d at 1066. If an employer's conduct, however, reaches what may be characterized as outrageous then the trier of fact may determine if liability is proper. Worley v. Wyo. Bottling Co., Inc., 1 P.3d 615 (Wyo. 2000) (repeated threats of termination, demands for impossibly larger increases in sales, withholding a pay raise, vilification for minor infractions, demotion, and, finally, termination.); Kanzler v. Renner, 937 P.2d 1337 (Wyo. 1997) (repeated sexually motivated advances and physically intimidating behavior); Wilder v. Cody Country Chamber of Commerce, 868 P.2d 211 (Wyo. 1994) (placing employee on probation, cutting his pay, altering his employment status, requiring him to public humiliation, terminating him without a promised audit, and preventing employee from future employment elsewhere).

Here plaintiff alleges that over the course of several months defendant continued to promise him the originally agreed upon 10% stake in Broadsword, lying to plaintiff and thereby inducing him to first sign the ownership contract and then the employment contract. Plaintiff also contends that, after months of an emotionally and financially draining long-distance commute between Wyoming and Missouri, Broadsword fired him without the proper notice. Finally, plaintiff contends that, in what amounts to extortion, he was asked to give up all of his future claims against Broadsword in order to receive his last 30 days' pay, which he was lawfully owed in any circumstance. (Doc. 58 at 8.) Reasonable minds could disagree as to whether Broadsword went beyond merely "insist[ing] upon his legal rights in a permissible way" and whether the actions were outrageous as defined by Wyoming law. Therefore, the motion to dismiss Count 6 is denied.

    c. Count VII – Fraud

Plaintiff's Count 7 incorporates the facts alleged in Counts 1 through 6, and further alleges that Johnston's representations to plaintiff that he would receive a 10

percent interest in the company were false and intended to induce plaintiff to assist Johnston in acquiring Sharps, to give up his own interest in Sharps, and to bring into the business the discussed intellectual properties.

Defendant argues that Count 7 is merely a repackaging of a contract claim as a tort claim in violation of the "economic loss rule." (Doc. 52 at 8.) Plaintiff counters that the economic loss rule does not apply to a claim for actual fraud as he alleges against Broadsword. (Doc. 56 at 10.)

Wyoming's economic loss rule is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Board, 929 P.2d 1228, 1235 (Wyo. 1996). A plaintiff is barred from recovery when his claims are purely economic damages unaccompanied by physical injury to persons or property. Rissler, 929 P.2d at 1234 (dismissal of negligence claim, arising in the circumstances of contract, is affirmed; court takes no position as to whether claim for intentional interference with contract also falls under economic damage doctrine). However, the Wyoming Supreme Court has been clear that the economic loss rule does not apply to all torts. Id. at n.1. "Determining whether a particular intentional tort claim is simply a repackaged contract claim requires consideration of the conduct alleged, its relationship to the contractual duties of the parties, the source of the tort duty alleged to have been breached, and the nature of the damages claimed." Excel Const., Inc. v. HKM Eng'g, Inc., 228 P.3d 40, 48 (Wyo. 2010).

Plaintiff alleges an oral contract ("ownership contract") between himself and Broadsword. (Doc. 58 ¶¶ 8–9, 16–19, 21–24.) The asserted offer was that Broadsword would give plaintiff a 10% ownership stake in the company for plaintiff assigning the rights of plaintiff's trademarks, patents, inventions, and ideas for inventions related to the business of manufacturing and selling gun parts. (Doc.58 ¶ 9.) The consideration for this contract was the stake in defendant's company for the assigning of plaintiff's patent rights. (Id.) Plaintiff alleges he accepted this offer in a telephone call with Mr. Johnston on November 9, 2012. (Doc. 58 ¶ 9.) Plaintiff then alleges he performed his part of the

bargain, namely assigning over his patent rights to defendant and then continuing to develop patents and assigning them to defendant. (Doc. 58 ¶¶ 17–18, 22, 24.)

Plaintiff's fraud claim alleges that he was induced into signing over his patents, a valuable legal right, in order to receive a 10% stake in Broadsword. The Wyoming Supreme Court has not clearly stated whether a fraud claim is barred under the economic loss rule. This court will await the factual verdict in this case before ruling that Wyoming's economic loss rule invalidates plaintiff's fraud claim. The purpose of the economic loss rule is to encourage parties to contracts to allocate their risks by agreement and not through application of tort law. Excel Const., Inc., 228 P.3d at 45. Here the issue, defendant failing to provide plaintiff a 10% interest in Broadsword, may be proven to be within the context of the ownership contract, or even within the context of the entire contract. If such is the case, the court will reconsider whether or not a recovery for fraud may stand in the face of the economic loss rule. Thus, this court denies the motion to dismiss Count 7 without prejudice.

## V. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendants to dismiss (Doc. 51)

(a)  for lack of subject matter jurisdiction is denied; and

(b)  regarding counts 5 and 6 for good faith and dealing, intentional infliction of emotional distress are denied; and,

(c)  regarding count 7 for fraud is denied without prejudice.

                                    /S/   David D. Noce
                            **UNITED STATES MAGISTRATE JUDGE**

Signed on August 3, 2015.