**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL HENRY BLANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14 CV 1550 DDN |
| | ) | |
| BROADSWORD GROUP, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the court on the motion of defendant Broadsword Group, LLC to dismiss Counts 1, 2, 3, and 7 of plaintiff's fourth amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 85.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 12.) Oral argument was held on January 15, 2016.

## I. BACKGROUND

On September 9, 2014, plaintiff commenced this action against defendants Broadsword Group, LLC and Sharps Rifle Company, Inc. Plaintiff filed his first amended complaint on October 30, 2014, (Doc. 15) and parties agreed to a partial settlement and dismissal on April 9, 2015. (Doc. 37.) Plaintiff retained counsel and filed a second amended complaint, which dismissed Sharps Rifle Company, Inc. as a named defendant. (Docs. 50, 49.) Plaintiff filed a third amended complaint on June 26, 2015. (Doc. 58.) Plaintiff filed a fourth amended complaint on November 4, 2015. (Doc. 80.)

According to plaintiff's alleged facts, the following occurred. Plaintiff was the founder and majority owner of Sharps Rifle Company, LLC, an LLC in Montana, from 2007 to 2011. (Doc. Id. ¶ 3) Sharps, LLC was reincorporated as Sharps Rifle Company,

Inc. ("Sharps"), a Wyoming corporation in 2011. (Id. ¶ 4.) In early November 2012, plaintiff met with Mr. Jay Johnston and spoke about Johnston acquiring an ownership interest in Sharps, as well as, acquiring trademarks, patents, inventions, and ideas for inventions then owned by plaintiff. (Id. ¶¶ 5–6.) Johnston also told plaintiff he would be investing millions of his own funds to purchase and provide capital for the business. (Id. ¶ 6.) On November 9, 2012, Mr. Jay Lesser, representing Johnston, contacted plaintiff and offered a minimum 10% stake in the new company if plaintiff assisted Johnston in acquiring the trademarks, patents, inventions, and other previously discussed items that plaintiff owned. (Id. ¶¶ 7–8.) Plaintiff contacted Johnston on November 9, 2012, and accepted the offer presented to him by Lesser on Johnston's behalf. (Id. ¶ 9.) Johnston again represented he would be investing his own money to purchase and provide capital for the business. (Id.) This oral agreement is referred to as the "Ownership Contract" by plaintiff. (Id.) Johnston formed Broadsword Group, LLC as a Wyoming LLC on December 26, 2012. (Id. ¶ 10.)

Plaintiff alleges that the monies used to acquire Sharps and form Broadsword Group were not provided by Johnston. Rather, funding came from several creditors, over which Johnston has varying degrees of control, including Ailsa Craig Trust, Cima Aviacion LLC, and El Morro LLC. Therefore, Broadsword Group would not be worth as much as it was represented to be worth. Additionally, because Johnston has some form of control over the creditors he would be able to call in the loans funding Broadsword Group at any time, which could result in all of Broadsword Group's assets and worth being stripped. (Id. at ¶ 31.)

Plaintiff alleges that Johnston, as CEO of Broadsword Group, sent plaintiff a letter containing a written offer of employment ("Employment Contract") on January 4, 2013 offering employment as "Chief Armorer" at a salary of $60,000 per year with a possible year-end performance bonus. (Id. ¶ 11.) In this letter, there was no mention of the previous oral Ownership Contract. (Id.) Plaintiff was actually paid a salary of $75,000 per year. (Id. ¶ 15.) The Employment Contract provided that termination could only be done with thirty days' notice, unless done "for cause". (Id. ¶ 13.) The Employment

Contract did not mention Broadsword acquiring the intellectual property, trademarks, patents, inventions, or ideas for inventions currently owned or that might be developed by plaintiff.  (Id. ¶ 14.)  Plaintiff spoke with Johnston regarding this letter on January 4, 2014, and Johnston stated that actual salaries, commission, etc. would be firmed up in February.  (Id. ¶ 12.)  Plaintiff signed this Employment Contract on January 5, 2013, based on Johnston's January 4, 2015 representation.  (Id.)

Plaintiff alleges that between January 5 and February 11, 2013, Lesser and Johnston confirmed to plaintiff that the agreement for a 10% ownership share of Broadsword would still be honored.  (Id. ¶ 16.)   On February 11 and 20, 2013, plaintiff assigned to Sharps several trademarks plaintiff held either personally or in the name of companies of which plaintiff was the sole owner, because plaintiff believed he would be receiving a 10% interest in Broadsword.  (Id. ¶¶ 17–18.)  On February 24, 2013, plaintiff released Sharps from any and all claims he had and gave up his equity ownership interest. This allowed Broadsword to acquire 100% ownership in Sharps sometime subsequent to February 24, 2013.  (Id. ¶¶ 19–20.)  On March 19, 2013, Johnston told plaintiff that Broadsword was working on putting the 10% ownership interest into written form, which never happened.  (Id. ¶ 21.)

Plaintiff alleges that following Broadsword's acquisition of Sharps, plaintiff continued to design and develop inventions, some of which were patented, and some of which are only potential patents.  (Id. ¶ 22.)  Plaintiff provided these inventions and patents, per the oral Ownership Contract, to Broadsword and Sharps.  (Id.)  On August 7, 2013, Johnston orally confirmed to plaintiff, again, that he was to receive 10% ownership in Broadsword in return for his trademarks, patents, inventions, and products.  (Id. ¶ 23.)

Plaintiff alleges on March 6, 2014, plaintiff was told by Lesser and Johnston that he was terminated effective March 7, 2014.  On March 7, 2014, plaintiff came to work and was told to turn in his keys and vacate the premises.  Plaintiff was not provided 30 days' notice prior to the termination, nor was he paid after March 7, 2014.  (Id. ¶¶ 25–27.)  A March 7, 2014 email from Lesser to plaintiff stated plaintiff's termination was not "for cause."  (Id. ¶ 27.)

Plaintiff alleges on March 17, 2014, plaintiff received a letter from Broadsword stating he was terminated as of March 7, 2014. (Id. ¶ 28.) The letter offered payment of plaintiff's salary through April 7, 2014, if he would waive any claim for further compensation or other expectation of remuneration related to plaintiff's employment at Broadsword. (Id.) The letter also stated plaintiff would have to help in the filing of patents for some of the products plaintiff brought to Broadsword. (Id.) Plaintiff did not sign the letter and has not received any salary or other payments from Broadsword as of March 7, 2014. (Id. ¶ 29.)

Plaintiff's claims against defendant Broadsword are alleged in 7 counts:

Count 1:     breach of the Ownership Contract, seeking compensatory damages;
Count 2:     breach of the Ownership Contract, seeking specific performance;
Count 3:     promissory estoppel, seeking compensatory damages;
Count 4:     breach of the Employment Contract, seeking compensatory damages;
Count 5:     breach of the implied covenant of good faith and fair dealing, seeking compensatory damages and punitive damages;
Count 6:      intentional infliction of emotional distress, seeking compensatory damages and punitive damages; and
Count 7:     fraudulent representations, seeking compensatory damages and punitive damages.

Defendant has filed a counterclaim against plaintiff alleging breach of the Employment Contract. Defendant seeks either the fair market value of all Broadsword property still maintained by plaintiff in violation of the Employment Contract, or specific performance. (Doc. 53 at 15–16.)

## II. MOTION TO DISMISS

Defendant moves to dismiss, arguing that Counts 1-3 and 7 of plaintiff's second amended complaint fail to state a claim against Broadsword Group, LLC under Federal Rule of Civil Procedure 12(b)(6). (Doc. 85.) Defendant argues that plaintiff's fourth amended complaint shows that Broadsword, LLC is not the proper defendant. Rather, Mr. Jay Johnston is the proper defendant for those counts. (Doc. 86.) Plaintiff argues

that enough facts have been pled, which must be accepted as true by the court, to show that there is a possibility of a claim upon which relief may be granted. (Doc. 88 at 2–3.)

## A. <u>Legal Standard</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. <u>See</u> <u>Carton v. Gen. Motor Acceptance Corp.</u>, 611 F.3d 451, 454 (8th Cir. 2010). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." <u>Id.</u> at 555. The pleading must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## B. <u>Discussion</u>

Defendant argues that plaintiff has named the wrong defendant in Counts 1, 2, 3, and 7. Defendant argues Mr. Jay Johnston, not Broadsword, LLC, is the proper party. (Doc. 86 at 2.) Plaintiff counters that Johnston, as CEO of Broadsword, had the power to bind and speak for the company. Therefore, Johnston's oral Ownership Contract bound Broadsword and Broadsword is also liable for the fraud Johnston allegedly perpetrated. (Doc. 88 at 2–3.)

Under the agent-principal theory, "an admission of an agent or employee . . . may be received in evidence against his principal, if relevant to the issues involved, where the agent, in making the admission, was acting within the scope of his authority . . . ." <u>Bynote v. Nat'l Super Markets, Inc.</u>, 891 S.W.2d 117, 124 (Mo. 1995) (en banc) (quoting <u>Roush v. Alkire Truck Lines</u>, 299 S.W.2d 518, 521 (Mo 1957)); <u>see also,</u> <u>Cox v. Kansas City Chiefs Football Club, Inc.</u>, 473 S.W.3d 107, 126 (Mo. 2015) (en banc). Agents can have actual or apparent authority to bind the principal. <u>Ohio Cas. Ins. Co. v. W.N. McMurry Const. Co.</u>, 203 P.3d 312, 326 (Wyo. 2010); <u>Premium Fin. Specialists, Inc. v.</u>

Hullin and Kristie, 90 S.W.3d 110, 113 (Mo. Ct. App. W. D. 2002). Apparent authority is established case-by-case by examining the circumstances surrounding, dealings between, and actions of the parties. Ohio Cas. Ins. Co., 203 P.3d at 326; Premium Fin. Specialists, Inc., 90 S.W.3d at 113. If it is shown that an agent is acting against the principal's interest then the binding relationship may be broken. Sequa Corp. v. Cooper, 128 S.W.3d 69, 76 (Mo. Ct. App. 2003).

Plaintiff has alleged that Jay Johnston was the CEO of Broadsword, and therefore, acted as its agent. Although Broadsword was not in existence during either the November 8, 2012 initial offer or the November 9, 2012 telephone conversation between plaintiff and Johnston, it was in existence during the conversations which occurred between January 5, 2013 and February 11, 2013. According to plaintiff's allegations these conversations confirmed the prior offers. (Doc. ¶¶ 9, 10, 16.) After reiterating his status as CEO and owner of Broadsword, Johnston reassured plaintiff that the agreement "would be honored by Broadsword." (Doc. ¶ 16.) Also during this conversation, Johnston continued to represent that the money invested in Broadsword was his own, as the owner, and not borrowed on behalf of Broadsword. (Id.) Securing plaintiff's participation in Broadsword both as an employee and by relinquishing his patents to Broadsword, if proven, would further Broadsword's interests by providing it with valuable patents with which to create products. See Cox, 471 S.W.3d at 126. Plaintiff alleges he relied on these assertions when he agreed to the Employment Contract and gave Broadsword his patents in accordance with the alleged Ownership Contract. (Id. ¶¶ 12, 19–20, 22.) This reliance established the apparent authority of Johnston as an agent of Broadsword. See Ohio Cas. Ins. Co., 203 P.3d at 326; Premium Fin. Specialists Inc., 90 S.W.3d at 113. If proven, as CEO, plaintiff argues that Jay Johnston bound Broadsword to the promises he made on its behalf.

Plaintiff's allegations state plausible claims against Broadsword in Counts 1, 2, 3, and 7.

## V. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendants to dismiss Counts 1, 2, 3, and 7 (Doc. 85) is denied.


          /S/   David D. Noce

         **UNITED STATES MAGISTRATE JUDGE**


Signed on January 25, 2016.