**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL HENRY BLANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14 CV 1550 DDN |
| | ) | |
| BROADSWORD GROUP, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the court on the motion of plaintiff Michael Henry Blank for a default judgment against defendant Broadsword Group, LLC. (Doc. 150 oral). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 12). The court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 by reason of the diversity of the parties' citizenship and the amount in controversy.

## I. BACKGROUND

Plaintiff Michael Henry Blank alleges the following facts in his Fourth Amended Complaint. (Doc. 80). He was the founder and majority owner of Sharps Rifle Company, LLC, a Montana company, from 2007 to 2011. (*Id.* at ¶ 3). In 2011, he transferred various assets of this company to Sharps Rifle Company, Inc., ("Sharps") a Wyoming corporation owned by plaintiff and two others: Kevin Tierney and Bill Martin. (*Id.* at ¶ 4).

In November 2012, plaintiff met Jay Johnston at a gun show in Florida. (*Id.* at ¶ 5). At this meeting, Johnston told plaintiff he was interested in acquiring an ownership interest in Sharps, and they spoke about Johnston acquiring trademarks, patents, inventions, and ideas for inventions then owned by plaintiff. (*Id.* at ¶ 6). Johnston

represented that he would be investing millions of dollars of his own funds to purchase and provide capital for the business, specifically stating he would not need to borrow any money. *Id.*

On November 9, 2012, Mr. Jay Lesser, representing Johnston, contacted plaintiff and offered a minimum ten percent stake in a new company if plaintiff assisted Johnston in acquiring the trademarks, patents, inventions, and other previously discussed items that plaintiff owned. (*Id.* at ¶¶ 7–8). Plaintiff contacted Johnston the same day, and Johnston confirmed that he had in fact made the offer. (*Id.* at ¶ 9). Johnston again represented that he would be investing his own money to purchase and provide capital for the business, and that therefore a ten percent ownership interest would have great value. *Id.* Plaintiff accepted the offer. (*Id.* at ¶ 9). Plaintiff refers to this oral agreement as the "Ownership Contract." *Id.* Plaintiff then proposed an acquisition strategy for acquiring Sharps from Tierney and Martin, which was later successful. *Id.*

In late December 2012, Johnston formed Broadsword Group, LLC, in Wyoming. (*Id.* at ¶ 10). On January 4, 2013, Johnston, as CEO of Broadsword, sent plaintiff a letter containing a written "offer of employment (as well as continued employment)" as the "Chief Armorer" at Broadsword, with a salary of $60,000 per year with eligibility for a year-end performance bonus. (*Id.* at ¶ 11; Pl. Ex. 14). The letter made no mention of the Ownership Contract allegedly formed between Johnston and plaintiff in November.

Plaintiff contacted Lesser, then Director of Manufacturing for Broadsword, to inquire about the contract. (Doc. 80, ¶ 12). Lesser told him he believed that the offer Johnston sent "was essentially to get everyone some money coming in for the time being and that actual salaries, commissions etc. would be firmed up in February." *Id.*; Pl. Ex. 16. Lesser then confirmed with Johnston that this was the case. *Id.* Relying on this representation, Blank signed and returned the offer of employment on January 5, 2013. (Doc. 80, ¶ 12). The employment contract provided that plaintiff could only be terminated upon 30 days' notice, unless the termination was for cause. (*Id.* at ¶ 13). The contract made no mention of the agreement between plaintiff and Johnston to exchange intellectual property for an ownership in Broadsword. (*Id.* at ¶ 14; Pl. Exs. 14 and 15).

Plaintiff began to work for Broadsword on January 15, 2013, and was paid at a rate of $75,000 per year. (*Id.* at ¶ 15, Ex. 1). He alleges that between January 5 and February 11, 2013, Lesser, as president of Broadsword, and Johnston, as CEO, confirmed to plaintiff that the agreement for a ten percent ownership share of Broadsword would still be honored. (*Id.* at ¶ 16; Pl. Exs. 17, 19). On February 11 and 20, 2013, plaintiff assigned to Sharps several trademarks he held either personally or in the name of companies of which plaintiff was the sole owner, because plaintiff believed he would be receiving a ten percent interest in Broadsword. (Doc. 80, ¶¶ 17–18, Exs. 2-5; Pl. Exs. 20-24). On February 24, 2013, plaintiff released Sharps from any and all claims he had and gave up his equity ownership interest. (Doc. 80, ¶ 19; Pl. Ex. 200). This allowed Broadsword to acquire full ownership in Sharps sometime subsequent to February 24, 2013. (Doc. 80, ¶¶ 19–20; Pl. Ex. 24).

On March 19, 2013, Johnston emailed plaintiff that Broadsword was working on putting the ten percent ownership interest into written form, which never happened. (Doc. 80, ¶ 21; Pl. Ex. 27). Plaintiff alleges that following Broadsword's acquisition of Sharps, plaintiff continued to design and develop inventions, some of which were patented, and some of which are only potential patents. (*Id.* at ¶ 22; Pl. Ex. 31). Plaintiff provided these inventions and patents, per the oral Ownership Contract, to Broadsword and Sharps. *Id.* On August 7, 2013, Johnston orally confirmed to plaintiff, again, that he was to receive ten percent ownership in Broadsword in return for his trademarks, patents, inventions, and products. (*Id.* at ¶ 23). Plaintiff alleges defendant's agents continued to represent that Broadsword was privately funded. (*Id.* at ¶ 16; Pl. Exs. 25, 204, 210).

Plaintiff alleges that Broadsword hired him to live and work in Missouri, but then began to demand that plaintiff report to work in Wyoming without relocation assistance or a raise, even though plaintiff could not afford to relocate his young children and elderly mother. (Doc. 80, ¶¶ 63-67, Pl. Exs. 26, 30, 38, 41-43). Plaintiff alleges that requiring him to engage in uncompensated commuting from Missouri to Wyoming put

him in dire financial need, and it was intended to force plaintiff to resign and abandon the intellectual property he had been induced to turn over. *Id.*

Plaintiff alleges that on March 6, 2014, Lesser and Johnston informed him that he was terminated effective March 7, 2014. (Doc. 80, ¶ 25-27; Pl. Ex. 44). On March 7, 2014, when plaintiff came to work , he was told to turn in his keys and vacate the premises. (Doc. 80, ¶¶ 25-27). Plaintiff was not provided 30 days' notice prior to the termination, nor was he paid after March 7, 2014. *Id.* A March 7, 2014 email from Lesser to plaintiff stated plaintiff's termination was not for cause. (Doc. 80, ¶¶ 25-27; Pl. Ex. 44). Plaintiff alleges that on March 17, 2014, he received a letter from Broadsword stating he was terminated as of March 7, 2014, and offering payment of plaintiff's salary through April 7, 2014, if he would waive any claim for further compensation or other expectation of remuneration related to plaintiff's employment at Broadsword. (Doc. 80, ¶ 28, Ex. 6). The letter also stated plaintiff would have to help in the filing of patents for some of the products plaintiff brought to Broadsword. *Id.* Plaintiff did not sign the letter and has not received any salary or other payments from Broadsword as of March 7, 2014. (*Id*. ¶ 29).

Plaintiff alleges that the trademarks, patents, inventions, and products he made available to Broadsword in fulfilling his duties under the Ownership Contract provided the foundation for the entire product line offered for sale by Broadsword and Sharps. (*Id.* at ¶ 24). It continues to provide Broadsword and Sharps with virtually their entire product line. *Id.*

Plaintiff also alleges that the funds used to acquire Sharps from Broadsword and to finance the operation of Broadsword were not provided by Johnston. Rather, funding came from several creditors, over whom Johnston has varying degrees of control, including the Ailsa Craig Trust, the Cima Aviacion LLC, and the El Morro LLC. Therefore, Broadsword would not be worth as much as it was represented to be worth. Additionally, because Johnston has some form of control over the creditors, he would be able to call in the loans funding Broadsword at any time, which could result in all of Broadsword's assets and worth being stripped. (*Id*. at ¶ 31).

## II. PROCEDURAL BACKGROUND

Plaintiff Blank commenced this action *pro se* on September 10, 2014. (Doc. 1). In April 2015, an attorney entered his appearance for plaintiff and the parties proceeded with filing several dispositive motions. (Docs. 38, 41, 51, 85). In March 2016, a jury trial date was scheduled for October 3, 2016. (Doc. 104). In August 2016, the date was reset to October 11, 2016. (Doc. 107). The parties held a final pre-trial conference on September 23, 2016, at which time the trial was continued to November 7, 2016, and then, on September 27, 2016, it was continued to February 6, 2017. (Doc. 130).

On December 19, 2016, counsel for defendant Broadsword Group, LLC, moved for leave to withdraw from representing defendant; in this motion, counsel represented that defendant understood it would then be a *pro se* corporation. (Doc. 139). For the good order of the progress of the case, the court denied defense counsel's motion for leave to withdraw. (Doc. 140). Upon renewed motion, defendant's counsel sought leave to withdraw from representing defendant. (Doc. 141). Defendant's counsel stated that Broadsword had not paid its bills for legal services timely, that it had no more assets and would not be able to pay counsel to further defend the lawsuit, and that its CEO expected a default judgment might be issued against it. (Doc. 141). The court held a hearing on and subsequently granted this motion, on January 9, 2017, but upon the condition that counsel provide the Clerk of Court and opposing counsel the last known contact information for defendant Broadsword. (Docs. 143 and 145).

On January 19, 2017, the court set a status conference for January 27, 2017. (Doc. 147). On January 25, 2017, plaintiff moved for sanctions against Broadsword. (Doc. 148). At the January 27 status conference, defendant did not appear. (Doc. 150). Plaintiff made an oral motion for default judgment against defendant and orally waived his right to jury trial. (Doc. 150). The court vacated the jury trial setting and set a non-jury trial and motion hearing on all pending motions for February 6, 2017. (Doc. 150).

At the February 6 proceeding, defendant again failed to appear. (Doc. 152). Plaintiff and an expert witness testified. (Doc. 152). Plaintiff was given two weeks to

prepare and submit proposed findings of fact. (Doc. 152). However, eleven days later, on February 17, 2017, plaintiff filed notice of an involuntary petition for bankruptcy against defendant Broadsword in the United States Bankruptcy Court for the District of Wyoming. (Doc. 155). In light of that notice, the court stayed the proceedings and denied plaintiff's motion for sanctions without prejudice. (Docs. 159 and 160). Plaintiff's attorney withdrew as counsel in March 2017, and substituted counsel entered his appearance. (Docs. 157 and 158).

On October 11, 2017, plaintiff notified the court that the involuntary petition for bankruptcy was closed on September 20, 2017. (Doc. 163). Accordingly, the court reopened the case and lifted the stay. (Doc. 164). Plaintiff filed proposed findings of fact on October 30, 2017. (Doc. 165).

### III. LEGAL STANDARD FOR DEFAULT JUDGMENT

At the January 27, 2017 status conference, plaintiff moved orally for default judgment against defendant. (Doc. 150). Defendant's representative was served a copy of plaintiff's written motion requesting default judgment, via email[1] and postal mail, on January 25, 2017. (Doc. 148). He was served notice of the hearing in the same manner on January 27, 2017. The trial of this action had been set for February 6, 2017, since the court's order of September 27, 2016. (Doc. 131). After defendant notified the court of its intent to default, and when plaintiff waived his right to jury trial, the court vacated the jury trial setting and set a non-jury proceeding for the same date. (Docs 150, 151).

Default judgment for failure to defend is appropriate where the party against whom the judgment is sought has engaged in "willful violations of court rules, contumacious conduct, or intentional delays." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996).

Corporate defendant Broadsword Group LLC's CEO attested that it was aware the withdrawal of counsel would subject it to a likely default judgment and agreed to the

---

[1] Counsel for plaintiff confirmed at the January 27, 2017 hearing that defendant's representative had responded to emails at the email address to which notice was sent.

withdrawal anyway. (Doc. 141, Ex. 2). His declaration further stated that Broadsword did not intend to retain new counsel to defend the lawsuit. *Id.* The law does not allow a corporation to proceed pro se. *See id.* (citing 28 U.S.C. § 1654); *United States v. Van Stelton*, 988 F.2d 70 (8th Cir. 1993) ("a corporation cannot appear pro se"). Defendant has failed to appear at any court hearing following the withdrawal of its counsel. It has also failed to produce its representatives and officers for deposition, despite multiple agreements to do so. (Doc. 148). As an unrepresented corporation that has failed to appear or communicate with the court since the withdrawal of its counsel, defendant has failed to defend this case. It has, moreover, explicitly acknowledged its intent to be subjected to a default judgment. (Doc. 141, Ex. 2). Accordingly, for its being without counsel and for its intentional failure to appear at a long-set trial of the case, defendant Broadsword Group LLC is in default. (Doc. 145); *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d at 856.

Where default is entered, the allegations of the complaint are taken as true, except as to the amount of damages. *Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973). However, it remains "incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering final judgment." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010); *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). After the entry of default, the need for an evidentiary hearing on the question of damages is within the sound discretion of the district court. *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008). A plaintiff must prove the amount of damages by a "fair preponderance" of the evidence. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818-19 (8th Cir. 2001). The court's findings of fact regarding the damages to which plaintiff is entitled are set forth below.

## IV. DISCUSSION

Plaintiff has asserted seven claims: breach of ownership contract (Count 1), specific performance of an ownership contract (Count 2), promissory estoppel (Count 3), breach of employment contract (Count 4), breach of implied covenant of good faith and

fair dealing (Count 5), intentional infliction of emotional distress (Count 6), and fraud (Count 7). (Doc. 80). "In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008). For both contract and tort actions, Missouri courts apply the significant relationship tests found in the Restatement (Second) of Conflicts of Law (1971). *Id.*

The employment contract provides that Wyoming law governs the agreement. (*Id.* at Ex. 1). The contracts at issue were made in Wyoming, Broadsword was formed and is based in Wyoming, the work was done in Wyoming, and plaintiff was terminated in Wyoming. Wyoming has the most substantial relationship to the parties and the contracts. The only contact with Missouri is that plaintiff resided and continues to reside here, and he allegedly suffered some of his emotional distress here. The parties agreed in pre-trial proceedings that Wyoming law applied to all of the claims except for intentional infliction of emotional distress, and the court determined at the pre-trial conference that Wyoming law would apply also to that claim. (Docs. 80, 112, 124, 180). Accordingly, the substantive law of Wyoming provides the rules of decision for all of the claims in this action. 28 U.S.C. § 1652.

### A.     Counts 1 and 2: Specific Performance and Breach of the Ownership Contract

In Counts 1 and 2, plaintiff alleges that he and defendant formed a binding "ownership contract" confirmed, renewed, and ratified by Broadsword officers; that plaintiff fully performed his duties under that contract; and that defendant breached the contract. (Doc. 80, ¶¶ 36-46). In Count 1, plaintiff asks for damages representing the value of at least a ten percent ownership share in Broadsword. (*Id.* at ¶ 40). In Count 2, plaintiff asks the court to require defendant specifically perform the contract by giving plaintiff a ten percent ownership interest in Broadsword. (*Id.* at ¶ 46).

Under Wyoming Law, the basic elements of a contract are offer, acceptance, and consideration. *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 647 (Wyo. 2003). In

order for a contract to exist, there must be mutual assent to the same terms. *Id.* "An agreement to make a written contract where the terms are mutually understood and agreed on in all respects is as binding as the written contract would be if it had been executed." *Id.* at 648 (citations omitted). However, "if the parties do not intend to close the contract until it shall be fully expressed in a written instrument properly attested, then there will be no complete contract until the agreement shall be put into writing and signed." *Id.* (citations omitted).

It is not immediately clear from the complaint that the terms were mutually understood and agreed on "in all respects." *Id.* at 647. On the contrary, it appears that while there was a general agreement to make some exchange, the specific terms had yet to be finalized. (*Id.* at ¶ 12). Plaintiff alleges that his specific ownership interest amount was to be *at least* ten percent: this was a baseline amount, and there had been discussions of an interest of up to twenty percent. (*Id.* at ¶ 8; Doc. 152). Furthermore, it appears that Johnston did not intend to finalize the contract until it was in writing, and plaintiff alleges that he also sought to reduce the agreement to writing multiple times. (Doc. 80 at ¶ 12, 16, 21, 23).

Based on these considerations, plaintiff is not entitled to default judgment on his oral Ownership Contract claims. Plaintiff and defendant's agents had not agreed on the terms "in all respects," and the facts alleged indicate that the contract was to be finalized in a writing. Accordingly, Counts 1 and 2 are dismissed.

### B.      Count 3: Promissory Estoppel

In Count 3, plaintiff alleges that Johnston promised him that, in return for plaintiff assisting in the acquisition of Sharps and making certain intellectual properties available for the benefit of Broadsword, plaintiff would receive a ten percent interest in Broadsword, that Broadsword would be funded by personal funds of Johnston. (*Id.* at ¶ 48). Plaintiff also alleges that he reasonably relied on Johnston's promises of an ownership interest to his detriment by providing Johnston with strategy for obtaining ownership of Sharps Rifle Company, Inc.; making trademarks available to defendant that

plaintiff held personally or through his companies; entering into a release agreement in which he released any claims he had to Sharps Rifle Company, Inc.; and bringing to defendant his own personally owned and developed patents, potential patents, inventions, and products. (*Id.* at ¶ 49). He alleges that defendant's promise was clear and unambiguous, plaintiff's reliance on the promise was reasonable and foreseeable, defendant failed to fulfill the promise, and plaintiff was thereby damaged. (*Id.* at ¶¶ 50-54). He asks that the court estop defendant "from denying its duty to fulfill its promises to plaintiff." (*Id.* at ¶ 53).

Under Wyoming's doctrine of promissory estoppel, if no contract exists, a promisee can recover damages upon proving:

> (1) the existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3) a finding that injustice can be avoided only if the court enforces the promise.

*Parkhurst v. Boykin*, 94 P.3d 450, 460 (Wyo. 2004) (quotation citation omitted). The facts as plaintiff has alleged constitute a legitimate claim of promissory estoppel. Johnston, on behalf of defendant Broadsword Group LLC, issued a clear and definite promise to plaintiff and confirmed this promise on multiple occasions. (Doc. 80). This promise would reasonably be expected to induce action by plaintiff. Plaintiff reasonably relied on the promise to his detriment in assigning intellectual property rights to Broadsword and facilitating Broadsword's acquisition of Sharps by releasing any claims he had to it. *Id.* "The third element of promissory estoppel is a finding by the court that 'the equities' support enforcement of the promise. This means that promissory estoppel is only invoked when it is necessary to avoid injustice, which is a policy determination that embraces an element of discretion." *Birt*, 75 P.3d at 652. This court finds that injustice can only be avoided if the court enforces the promise. Default judgment is entered for plaintiff on Count 3.

### C. Count 4: Breach of the Employment Contract

In Count 4, plaintiff alleges that he entered into a binding employment contract with defendant and fully performed his contractual duties, but that defendant breached the contract by failing to provide plaintiff 30 days' notice of his termination and failing to pay plaintiff the amount of his salary for the 30 days following the notice of termination. (*Id.* at ¶¶ 55-59). He asks for damages that will reasonably compensate him for this breach. *Id.*

Taking the allegations of the complaint as true, plaintiff has made a legitimate claim for breach of the employment contract. He attached the contract as an exhibit to his complaint and alleged that it was an offer supported by consideration that he accepted by signing and delivering. (*Id.* at ¶¶ 11-12, Ex. 1). The documentary contract provides that if plaintiff is terminated not for cause, he is entitled to 30 days' notice of the effective date of termination, as well as all salary earned up to the effective date. (*Id.* at Ex. 1). Plaintiff has alleged that a Broadsword officer confirmed plaintiff was not terminated for cause. (*Id.* at ¶ 27). Defendant breached its contractual duty by providing plaintiff with one day's notice, and salary only up to that date. Accordingly, plaintiff is awarded a default judgment as to Count 4. Plaintiff is entitled to thirty days' pay for the breach.

### D. Count 5: Breach of Implied Covenant of Good Faith and Fair Dealing

In Count 5, plaintiff alleges that defendant made promises that were intended to influence plaintiff to give up his ownership interest in Sharps and assign his intellectual property rights to Broadsword. (Doc. 80, ¶¶ 60-70). In so doing, he alleges that "Broadsword created a special relationship of trust and reliance . . . such that plaintiff entrusted Broadsword with his valuable intellectual property . . . thereby relying on Broadsword to act in good faith and to deal with him fairly." (*Id.* at ¶ 62). Plaintiff alleges that Broadsword hired him to live and work in Missouri, but then began to demand that plaintiff report to work in Wyoming without relocation assistance or a raise, even though plaintiff could not afford to relocate his young children and elderly mother. (*Id.* at ¶¶ 63-67). Plaintiff alleges that requiring him to engage in uncompensated

commuting from Missouri to Wyoming put him in dire financial need, and it was intended to force plaintiff to resign and abandon the intellectual property he had been induced to turn over. *Id.* Plaintiff alleges that Broadsword attempted to force plaintiff to sign away his ownership interest in Broadsword in exchange for the thirty days of pay he was entitled to under the employment contract. *Id.* Plaintiff alleges that these actions were done with malice and with wanton disregard to duty and to the rights of plaintiff and others. He seeks damages, including punitive damages. (*Id.* at ¶¶ 68-70).

Wyoming has recognized a tort-based claim for breach of the implied covenant of good faith in limited circumstances. *McCullough v. Golden Rule Insurance Company*, 789 P.2d 855 (Wyo.1990) (insurance); *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211 (Wyo.1994) (employment). In employment cases, Wyoming courts have limited the tort to those situations where a "special relationship of trust and reliance" exists between the employer and the employee. *Worley v. Wyoming Bottling Company, Inc.*, 1 P.3d 615, 624 (Wyo.2000). "Previous cases indicate some of the sources that may give rise to a special relationship include separate consideration, common law, statutory rights, or the existence of rights accruing with longevity of service." *Id.* (citations omitted).

This case involves separate consideration given by plaintiff for defendant's promise: plaintiff gave up valuable consideration other than his customary daily services. This included his rights in Sharps and his rights to certain intellectual properties. He gave up more than one normally gives up in agreeing to take on new employment. *See id.* (citations omitted). "The rule that permanent employment arrangements are indefinite and hence unenforceable [can create] serious inequities when the clear intent of the parties [is] to bind the employer. To correct the situation the courts recognize[] an exception to the rule when an employee [gives] consideration for the job." *Id.* (citations omitted). Plaintiff gave up his rights to intellectual property by assigning them to his employer, as well as releasing any claim he might have to Sharps. This additional consideration created a special relationship.

Having concluded that a special relationship of trust and reliance existed based on the alleged facts, "the next question is whether [defendant] breached the duty of good faith and fair dealing. A breach of the covenant will generally be found in cases involving egregious conduct that ordinary contract principles cannot remedy." *Id.* at 626. (citations omitted). In other words, the question is whether the employer has acted in bad faith. *Id.* "[M]ost commonly the employee must have been terminated to avoid payment of commissions or benefits already earned, or to avoid payment of benefits scheduled to arise or vest in the near future." *Id.* at 627. Plaintiff alleges Broadsword fired him to avoid granting the ten percent ownership interest. He has alleged facts sufficient to establish that this occurred and that defendant acted in bad faith. Accordingly, plaintiff is entitled to default judgment on Count V.

### E.     Count 6: Intentional Infliction of Emotional Distress

In Count 6, plaintiff alleges that defendant's conduct was extreme and outrageous and intentionally or recklessly caused him to suffer severe emotional harm. (Doc. 80, ¶¶ 71-79). This conduct included requiring him to work in Wyoming to his family's personal detriment, terminating him without cause and without notice, and attempting to extort him to give up his claim to an ownership interest in Broadsword and his intellectual property in exchange for 30 days of pay. *Id.* Plaintiff alleges that Broadsword knew of plaintiff's financial situation and that he had young children and an elderly mother who depended on him. *Id.* He alleges that defendant's actions stripped him of his most valuable asset for earning a living in the firearms industry: his intellectual property. *Id.* He alleges that he suffered shame, humiliation, severe anxiety due to financial hardship, perceived and actual damage to his reputation in the firearms industry, damage to his ability to earn a living, and severe damage to his marriage and family relationships. *Id.*

Under Wyoming law, "[t]o recover under the tort of intentional infliction of emotional distress, the plaintiff must prove that the defendant acted in an extreme and outrageous manner and that the defendant intentionally or recklessly caused the plaintiff

severe emotional harm." *Worley v. Wyoming Bottling Co.*, 1 P.3d 615, 628 (Wyo. 2000). While a plaintiff must prove that his distress was "severe," there is no explicit requirement about the manner of proof. *Id.* at 630. Wyoming adopts the Restatement (Second) of Torts on this matter:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Id.* at 628 (quoting Restatement (Second) of Torts § 46).

In this case, plaintiff has pled facts that paint a sufficiently severe picture of his dealings with defendant and its agents. He alleges that defendant's agents effectively strung him along with the promise of an ownership interest, inducing him to transfer over valuable intellectual property rights and, once that was accomplished, terminating him with no notice in violation of the employment contract. (Doc. 80). They then proceeded to pressure him to release them from all claims and to assist them in obtaining more of plaintiff's intellectual property in exchange for his final paycheck, to which he was already entitled under the employment contract. (Doc. 80).

Plaintiff has alleged that defendant intended to cause him emotional harm, or at least recklessly did so. (*Id.* at ¶¶ 71-79). He alleges that these actions did in fact cause

him significant emotional distress.  *Id.*  However, plaintiff has not provided any facts to support his bare claim that he suffered distress.  Wyoming law does not require medical evidence to prove severe distress, but a plaintiff needs to provide some supporting facts related to the impact of the distress on his emotional state, "such as missed work, inability to sleep or engage in hobbies and activities previously enjoyed, diminished ability to socialize or handle the necessary functions of everyday life, or memory loss." *Hoblyn v. Johnson*, 55 P.3d 1219, 1232 (Wyo. 2002).  Plaintiff has not done so here.  In his proposed findings of fact filed with the court, he does not list any facts supporting his claim that he suffered severe emotional distress (Doc. 165), nor did he testify about the distress he suffered at the court's non-jury proceeding.  (Doc. 152).  *See Ahrenholtz v. Laramie Econ. Dev. Corp.*, 79 P.3d 511, 518 (Wyo.), *amended on reh'g*, 82 P.3d 714 (Wyo. 2003) (holding that the basic allegation that a plaintiff was emotionally damaged is not sufficient evidence of emotional distress).  He provides only the bare claim that he suffered emotional distress, and he does not describe the impact the distress had on his emotional state.  Count 6 is therefore dismissed.

### F.      Count 7: Fraud

In Count 7, plaintiff alleges that defendant's CEO represented to plaintiff that he would be given a ten percent interest in Broadsword, that Broadsword would have two owners, and that it would be funded and capitalized with the CEO's own funds—not borrowed funds.  (Doc. 80, ¶¶ 80-84).  Plaintiff alleges that these representations were false; were fraudulently made; and were intended to induce plaintiff to assist in acquiring Sharps, give up his ownership interest in Sharps, and bring his intellectual property to Broadsword.  *Id.*  Plaintiff alleges he reasonably believed the representations to be true and reasonably relied on them by performing his agreed-upon contractual duties.  *Id.*  As a result of this reliance, plaintiff alleges he has sustained damages, and he also seeks punitive damages because he claims defendant's conduct was gross and outrageous.

Under Wyoming law, the elements of fraud are: "(1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably

believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Singer v. Lajaunie*, 339 P.3d 277, 285 (Wyo. 2014). "In order to prove intentional misrepresentation, the plaintiff must show that the misrepresentation was made intentionally, with knowledge of its falsity, or that the maker of the misrepresentation was at least aware that he did not have a basis for making the statement." *Id.*

Plaintiff has alleged sufficient facts to support his fraud claim. He alleged that Johnston and Lesser's representations were false when made and supported this allegation by detailing a carrot-and-stick relationship, where defendants consistently promised and made reference to plaintiff's ownership interest in Broadsword; asked plaintiff to continue to give up rights and contribute value to the business; but did not, over the course of an entire year and a half, ever take any steps to reify that promise. Plaintiff reasonably believed Johnston and Lesser's representations to be true, and, relying on these representations, he suffered damages. For these reasons, plaintiff is also entitled to default judgment on his Count 7 claim of fraud.

## V. DAMAGES

### Compensatory Damages

Johnston promised plaintiff that, in return for plaintiff assisting in the acquisition of Sharps and making certain intellectual properties available for the benefit of Broadsword, plaintiff would receive a ten percent interest in Broadsword, that Broadsword would be funded by personal funds of Johnston. At trial, plaintiff's expert testified, and the court finds, that a ten percent interest in Broadsword was worth $509,000 at fair market value in 2015. (Pl. Ex. 199 at 5).

Wyoming allows prejudgment interest when damages are "readily computable by basic mathematical calculation." *Pennant Serv. Co. v. True Oil Co., LLC*, 249 P.3d 698, 711 (Wyo. 2011); Wyo. Stat. Ann. § 40-14-106. An award of prejudgment interest "is in the nature of preventing the unjust enrichment of the defendant who has wrongfully delayed payment," and it is therefore appropriate here. *Id.* Accounting for seven percent

interest per year from the time notice was given of the claim, *Platt v. Platt*, 337 P.3d 431, 446 (Wyo. 2014); *Millheiser v. Wallace*, 21 P.3d 752, 755 (Wyo. 2001), since September 22, 2014 (Doc. 4), the court finds that plaintiff is entitled to economic compensatory damages in the amount of $618,859.16.[2]

As to plaintiff's breach of employment contract claim, when the provisions in a contract are clear and unambiguous, Wyoming courts look only to the "four corners" of the document in arriving at the intent of the parties. *Scherer Const., LLC v. Hedquist Const., Inc.,* 18 P.3d 645, 656 (Wyo. 2001). Although plaintiff alleges he was paid $75,000 a year (Doc. 80 at ¶ 15), the contract states he was to be paid $60,000 per year. (*Id.* at Ex. 1). As this term is unambiguous, the contract will be enforced according to its terms. The court finds that, based on the principles discussed above, defendant wrongfully delayed payment to plaintiff of $4,932. Plaintiff is also entitled to prejudgment interest. Under the applicable Wyoming statute, an employee who has been discharged and brings suit for wages earned and due is entitled to an interest rate of eighteen percent per year from the date of termination, plus reasonable attorney fees and costs of the suit. Wyo. Stat. Ann. § 27-4-104. Accordingly, plaintiff is entitled to $7,669[3] for this breach, plus reasonable attorney fees and costs of the suit.

Plaintiff is also entitled to post-judgment interest on these amounts at the rate required by federal law. 28 U.S.C. § 1961(a).

## Punitive Damages

Plaintiff also seeks punitive damages on the counts awarded default judgment. (Doc. 80 at ¶¶ 70, 79, 84). Punitive damages are not favored under Wyoming law. *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 837 (Wyo. 1994). They are awarded not to compensate the plaintiff, but to punish the defendant and deter others from such

---

[2] Rounded to the nearest dollar ($509,000+$(509,000 X .07 X (37/12))).

[3] Thirty-days' pay, rounded to the nearest dollar, is $4,932. Interest of 18% per year over 37 months, rounded to the nearest dollar, is $2,737.

conduct. *Alexander v. Meduna*, 47 P.3d 206, 218 (Wyo. 2002). "Outrageous conduct, malice, and willful and wanton misconduct are sufficient bases to warrant punitive damages." *Id.* (citations omitted). The Wyoming Supreme Court has examined the intent necessary to support a finding of willful and wanton misconduct:

> The intent in willful and wanton misconduct is not an intent to cause the injury, but it is an intent to do an act, or an intent to not do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable [person] would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

*Danculovich v. Brown*, 593 P.2d 187, 193 (Wyo. 1979). This standard for entitlement to punitive damages was established in Wyoming long before defendant's actions against plaintiff. Upon his default judgment, plaintiff has shown that defendant acted with willful and wanton misconduct that was highly likely to result in substantial harm to plaintiff. Plaintiff is entitled to punitive damages as well as compensatory damages.

The amount of punitive damages awarded to plaintiff must comply with the Due Process Clause of the Fourteenth Amendment, which prohibits the imposition of "a grossly excessive punishment" on a tortfeasor. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575-85 (1996). The Court established the following constitutional standards for a punitive damages award: the degree of reprehensibility of the defendant's conduct, whether there is disparity between the harm or potential harm suffered and the award of punitive damages, and the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. *Id.* at 575-85. Wyoming courts acknowledge these and other factors:

> (1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.

> (2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or 'cover-up' of that hazard, and the existence and

frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.

(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.

(4) The financial position of the defendant would be relevant.

(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.

(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.

(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.

*Alexander v. Meduna*, 47 P.3d 206, 219 (Wyo. 2002) (quoting *Aetna Life Insurance Company v. Lavoie*, 505 So.2d 1050, 1062 (Ala.1987)).

Wyoming law also mandates that "in the absence of evidence of a defendant's wealth or financial condition an award of punitive damages cannot be sustained." *Adel v. Parkhurst*, 681 P.2d 886, 890–92 (Wyo. 1984); *see also Rosty v. Skaj*, 272 P.3d 947, 958–60 (Wyo. 2012) (reversing an award of punitive damages when the plaintiff produced a single paystub to prove an individual defendant's net worth); *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1057–58 (10th Cir. 2016) (noting that Wyoming does not require plaintiffs "in all contexts to present evidence of a defendant's net worth at the time of trial" and stating that the rule contemplates a variety of proofs to establish a defendant's financial condition).

In this case, plaintiff's expert examined defendant's financial records and concluded that, as of December 31, 2015, it had a net asset value of between $6,359,355 and $7,226,540. (Pl. Ex. 199 at 16-17; *see also* Docs. 47, 49, 50). This information is now nearly two years old, and there has been some suggestion that Broadsword is now insolvent. (Docs. 143, 155). But there is also evidence that Broadsword is backed by investors with significant assets who have control over its net worth, and that Broadsword

still owned real estate in excess of two million dollars as of February 2017. (Docs. 80, 152; Pl. Ex. 199). Accordingly, this court finds plaintiff has met his evidentiary burden.

A punitive damages award of $100,000, plus the costs of litigation, including attorney fees, is appropriate here. *See Meduna*, 47 P.3d at 218-21 (awarding attorney fees in a punitive damages award). This amount is approximately 16.5 percent of plaintiff's compensatory damages award of $602,774. The harm to plaintiff in this case was significant, and includes the loss of intellectual property and business interests, as well as damage to plaintiff's reputation, emotional well-being, family well-being, and ability to continue working in his chosen industry. The evidence supports a determination that defendant's conduct was willful, wanton, and reckless. A punitive damages award of $100,000 is not constitutionally excessive.

This punitive damages award also is consistent with Wyoming law. In comparable cases, plaintiffs have been awarded 10 to 25 percent of their compensatory damages amount. *Rosty v. Skaj*, 2012 WY 28, ¶ 7, 272 P.3d 947, 951 (Wyo. 2012) (punitive damages approximately 10% of compensatory damages in default judgment); *Alexander v. Meduna*, 47 P.3d 206, 221 (Wyo. 2002) (punitive damages approximately 25% of compensatory damages in fraud case); *McCulloh v. Drake*, 2001 WY 56, ¶ 9, 24 P.3d 1162, 1166 (Wyo. 2001) (punitive damages approximately 15% of compensatory damages in intentional infliction of emotional distress case).


## VI. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of plaintiff for default judgment is granted as to Counts 3, 4, 5, and 7. It is denied as to Counts 1, 2, and 6.

**IT IS FURTHER ORDERED** that plaintiff is awarded $618,859.16 in compensatory damages for Counts 3, 5, and 7, plus post-judgment interest. Plaintiff is awarded $7,669 in compensatory damages for Count 4, plus post-judgment interest.

Plaintiff is awarded $100,000 in punitive damages, plus his reasonable attorney's fees and the costs of the action.

An appropriate judgment order is entered herewith.


_____/S/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**

Signed on November 6, 2017.